UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
In re:                                        :
                                              :
LISANTI FOODS, INC., et al.                   :
                                              :
        Debtors.                              :
                                              :
_____              :
                                              :
JOSEPH M. LISANTI, JR., et al.                :
                                              :
              Appellants,                     :        CIVIL ACTION NO. 04-3868 (JCL)
                                              :
        v.                                    :        **OPINION**
                                              :
JAY LUBETKIN, Chapter 11                      :
Trustee of Lisanti Foods, Inc., et al.,       :
and THE OFFICIAL COMMITTEE                    :
OF UNSECURED CREDITORS OF                     :
LISANTI FOODS, INC., et al.                   :
                                              :
              Appellees.                      :
_____              :

**LIFLAND, District Judge**

        Before the Court is a motion by Joseph M. Lisanti, Jr., Rosemarie Lisanti,

Lisanti Realty of Arizona, Inc, Lisanti Realty Corp., Lisanti Enterprises, LLC,

Texas Trucking Corp., JL Trucking LLC, New Jersey Trucking Corp., and

Arizona Freight Haulers, Inc. (collectively, "Appellants") for relief from this

Court's Order of August 9, 2005 affirming the Bankruptcy Court's order

confirming the Second Amended Joint Plan of Reorganization (the "Plan").  For

the reasons stated herein, Appellants' motion will be denied.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lisanti Foods, Inc., Lisanti Foods of Arizona, Inc., and Lisanti Foods of Texas, Inc. (collectively, "Debtors") were wholesale distributors of Italian specialty foods and food related products.  Lisanti Realty of Arizona, Inc., Lisanti Realty Corp., Lisanti Enterprises, LLC, Texas Trucking Corp., JL Trucking LLC, New Jersey Trucking Corp., and Arizona Freight Haulers, Inc. (collectively, "Non-Debtor Entities") operated distribution centers and delivered the specialty foods and related products to the Debtors' customers.  Joseph M. Lisanti, Jr. is the former president of Lisanti Foods, Inc.  Mr. Lisanti and his sister, Rosemary Lisanti, are the sole officers, shareholders and/or members of each of the Debtors and Non-Debtor Entities.

Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 20, 2002.  Shortly thereafter, the cases were consolidated for joint administration, and an Official Committee of Unsecured Creditors was appointed pursuant to §§ 1102(a) and (b) of the Bankruptcy Code. In January 2003, the Bankruptcy Court, *inter alia*, approved the sale of substantially all of Debtors' assets, and appointed Jay L. Lubetkin as Chapter 11 Trustee with regard to the liquidation and distribution of the Debtors' consolidated

estate.  On October 14, 2004,  Lubetkin and the Committee of Unsecured

Creditors (collectively, "Appellees") filed the Plan and a related Disclosure

Statement with the Bankruptcy Court.

Appellants objected to confirmation of the Plan on several grounds.  As

relevant to this motion, Appellants argued that Appellees could not meet the

requirements of § 1123(a)(5), which requires a plan to "provide adequate means

for the plan's implementation."  11 U.S.C. § 1123(a)(5)(C).  Specifically,

Appellants contended that the Plan's implementation scheme was dependent on

the Bankruptcy Court granting substantive consolidation of the Debtors' estates,

and that Appellees could not demonstrate facts sufficient to meet the criteria for

substantive consolidation under Third Circuit caselaw.

On December 17 and 18, 2003, the Bankruptcy Court heard argument on

whether the proposed Plan satisfied the requirements of the Code.  On April 13,

2004, the Bankruptcy Court conducted further hearings on confirmation of the

Plan, during which it detailed reasons for finding that the Plan should be

confirmed.  This decision was memorialized in a Confirmation Order dated May

17, 2004.  Appellants appealed from the Confirmation Order arguing, *inter alia*,

that confirmation of the Plan was error because the Plan proponents, *i.e.* the

Appellees, failed to demonstrate the necessary prerequisites for substantive

3

consolidation.  This Court affirmed the Bankruptcy Court's Order in a Memorandum and Order dated August 9, 2005.  See In re Lisanti Foods, Inc., No. 03-3868, Memorandum and Order of August 9, 2005, at 11 ("The Bankruptcy Court did not abuse its discretion when it found that the proponents demonstrated the prerequisites for substantive consolidation.").

On August 18, 2005, Appellants filed a Notice of Appeal from this Court's decision to the United States Court of Appeals for the Third Circuit.  In October 2005, Appellants' counsel became aware that the Third Circuit had issued an opinion on August 15, 2005, addressing when substantive consolidation should be available and by what test it should be measured.  See In re Owens Corning, 419 F.3d 195 (3d Cir. 2005).[1]  Believing that "the Third Circuit Court of Appeals might determine to remand the Appellants' pending appeal of the Order back to this Court with instructions to reconsider the same in accordance with the Owens Corning case," Appellants' counsel contacted this Court to inquire whether the Court would rather allow the appeal to proceed or have Appellants seek reconsideration in this Court.

On October 26, 2005, this Court held a conference call with counsel for

---

[1] Counsel saw a discussion of the case in the October 2005 edition of the American Bankruptcy Institute publication, *Journal*.

4

Appellants and Appellees.  At the conclusion of the conference call, the Court

informed that parties that it would entertain a request by Appellants for relief from

the Order pursuant to Federal Rule of Civil Procedure 60(b).  On November 1,

2005, Appellants filed the instant motion for relief from this Court's August 9,

2005 Memorandum and Order.  Appellants have informed the Court that in

conjunction with the filing of the motion, they moved in the Third Circuit for a

stay of briefing pending a determination by this Court on the instant motion.  The

Third Circuit granted the motion on November 29, 2005.

## II.    DISCUSSION

### A.    Timeliness

As a threshold matter, Appellees dispute the timeliness of this motion.  In

order to determine whether the motion was timely, this Court must first decide

what procedural rule governs the motion.  Appellants characterized their motion as

a motion under Federal Rule of Civil Procedure 60(b), made applicable to

bankruptcy cases by Rule 9024(b) of the Federal Rules of Bankruptcy Procedure.

Rule 9024(b) provides that "Rule 60 F.R.Civ.P. applies in cases under the

[Bankruptcy] Code."  Appellees contend that Rule 60 may not be invoked here,

arguing that the Federal Rules of Civil Procedure do not apply to bankruptcy

proceedings unless a rule is specifically made applicable by a provision of the

Federal Rules of Bankruptcy Proceedings,[2] and that Rule 9024(b) only authorizes Rule 60 motions to be brought with respect to judgments or orders of a *bankruptcy court*—not as to judgments or orders of a district court exercising appellate jurisdiction in a bankruptcy case.  Bankruptcy Rule 8105, Appellees claim, provides the sole vehicle for challenging district court judgments in a bankruptcy context.[3]

Several courts have examined this question and adopted the position advanced by Appellees.  See, e.g., Butler v. Merchants Bank & Trust Co. (In re Butler, Inc.), 2 F.3d 154, 155 (5th Cir. 1993) ("Bankruptcy Rule 9023, which adopts Fed.R.Civ.P. 59, applies only to appeals from the bankruptcy court to the district court, and not to appeals from the district court to the court of appeals. When the district court is acting as an appellate court in a bankruptcy case,

---

[2] Federal Rule of Civil Procedure 81(a) provides: "These rules . . . apply to proceedings in bankruptcy to the extent provided by the Federal Rules of Bankruptcy Proceedings."  Fed. R. Civ. P. 81(a).

[3] Rule 8015 provides:
Unless the district court or the bankruptcy appellate panel by local rule or by court order otherwise provides, a motion for rehearing may be filed within 10 days after entry of the judgment of the district court or the bankruptcy appellate panel. If a timely motion for rehearing is filed, the time for appeal to the court of appeals for all parties shall run from the entry of the order denying rehearing or the entry of a subsequent judgment.
Fed. R. Bankr. P. 8015.

'Bankruptcy Rule 8015 provides the sole mechanism for filing a motion for rehearing.'") (quoting Matter of Eichelberger, 943 F.2d 536, 538 (5th Cir.1991)); Zegeye v. Keshishian (In re Zegeye), No. DKC 2004-1387, 2005 U.S. Dist. LEXIS 3463 (D. Md. March 4, 2005) ("When the district court is acting as an appellate court in a bankruptcy case, Rule 8015 provides the sole mechanism for filing a motion for rehearing."); Harris v. Albany County Office, No. 03-1406, 2005 U.S. Dist. LEXIS 2321, *4 (N.D.N.Y. Feb. 16, 2005) ("Although rules 59 and 60 are made applicable to cases under the Bankruptcy Code, their application has been found to be limited.  Courts specifically addressing the issue have held that rules 59 and 60 apply to judgments or orders of the bankruptcy court, but are inapplicable to judgments or orders of a district court sitting in an appellate capacity."); In re Brenner, Nos. 89-8322, 89-8680, 1991 U.S. Dist. LEXIS 16468, *6 (E.D. Pa. Nov. 8, 1991) ("Fed. R. Civ. P. 60(a), like Fed. R. Civ. P. 59, does not apply to motions [for relief] from a judgment of a district court exercising appellate jurisdiction in a bankruptcy case."); In re Conn Aire, Inc., 91 B.R. 462, 462 n.2 (M.D. Tenn. 1988) (finding that Rule 9024 makes Rule 60 applicable only to challenges to bankruptcy court orders).

The most thorough and persuasive analysis of this issue was performed by the United States Court of Appeals for the District of Columbia Circuit in The

English-Speaking Union v. Johnson, 353 F.3d 1013 (D.C. Cir. 2004). In The

English-Speaking Union, the district court, exercising appellate jurisdiction over

an order of a bankruptcy court, dismissed an appeal for want of prosecution. The

Union filed a motion to vacate the dismissal order pursuant to Rule 60. The

district court held that Bankruptcy Rule 8015 was the sole vehicle by which the

Union could challenge the district court's order, and accordingly treated the

motion as one filed pursuant to Rule 8015. On appeal, the D.C. Circuit addressed

this question in some detail. The Court noted that the advisory committee note to

Bankruptcy Rule 9024 "suggests that Rule 60 applies in narrower circumstances in

the bankruptcy context: 'For the purpose of this rule all orders *of the bankruptcy*

*court* are subject to Rule 60 F.R. Civ. P.'" Id. at 1019 (quoting Fed. R. Bankr. P.

9024 advisory committee's note). The Court then pointed out that

> [r]eading Rule 9024 to apply only to bankruptcy court proceedings is
> also supported by Bankruptcy Rule 8002, which postpones the time for
> appealing from the bankruptcy court to the district court when a Rule
> 9024 post-trial motion is pending--just as Federal Rule of Appellate
> Procedure 6 tolls appeals court review when a Rule 8015 motion is
> pending in the district court acting in its bankruptcy appellate capacity.
> Compare  Fed.  R.  Bankr.  P.  8002(b)(4),  with  Fed.  R.  App.  P.
> 6(b)(2)(A)(I).

Id.

8

This Court is persuaded by the D.C. Circuit's analysis.[4]  Accordingly, despite Appellants' characterization of the motion, the Court will treat it as a motion for rehearing governed by Bankruptcy Rule 8015.  See Union Switch and Signal v. United Electrical, Radio & Machine Workers of America, Local 610, 900 F.2d 608, 615 (3d Cir. 1990) ("In determining how to characterize the Union's motion, we are not constrained by how it is titled.").

Rule 8015 provides:

> Unless the district court or the bankruptcy appellate panel by local rule or by court order otherwise provides, a motion for rehearing may be filed within 10 days after entry of the judgment of the district court or the bankruptcy appellate panel.

Fed. R. Bankr. P. 8015.  Since Appellants' motion was not filed within ten days after entry of this Court's judgment, Appellees contend that the motion should be denied as untimely. Appellants respond that "[b]ased on the discussions had and the instructions given during the October 26, 2005 telephonic conference call with the Court, there should be no dispute that this Court . . . for all intents and purposes, waived any requirement that the motion be filed within ten days after the August 11, 2005 entry of the Order."  (Appellants' Rep. Br. at 4.)

---

[4] Notably, even Appellants seem to be persuaded by this argument.  In their reply brief, Appellants essentially ask the Court to construe their motion as one under Rule 8015.  (Appellants' Rep. Br. at 5.)

Rule 8015 is clear that a motion for rehearing must be filed within ten days *unless the district court otherwise provides*.  Here, the Court provided otherwise. This Court explicitly informed the parties on October 26, 2005 (nearly three months after the Order at issue was filed) that it would entertain a motion for reconsideration.  Thus, the ten day deadline does not apply, and the motion is timely filed.

### B.    Standard of Review

Rule 8015 is silent as to the appropriate standard for granting a rehearing, and the Third Circuit has not designated a standard.  Several courts have held that "'because Rule 8015 was derived from Fed. R. App. P. 40, it is appropriate to look to the appellate rule for guidance.'"[5]  BCORP-HRT, LLC v. Lobb (In re Lobb), 66 Fed. Appx. 164, 167 (10th Cir. 2003) (unpublished) (quoting Olson v. United States, 162 B.R. 831, 834 (Bankr. D. Neb. 1993)); see also United States v. Fowler (In re Fowler), 394 F.3d 1208, 1215 (9th Cir. 2005) (holding that a "district court did not abuse its discretion by looking to a parallel federal appellate rule for guidance in applying a reasonable standard to a [Rule 8015] motion for rehearing"); Dep't of Revenue v. Raleigh (In re Stoecker), 179 B.R. 532, 539

---

[5] The Advisory Committee Note to Rule 8015 explicitly states that the rule "is an adaptation of the first sentence of Rule 40(a) F.R.App.P."  Fed. R. Bankr. P. 8015 advisory committee note.

(N.D. Ill. 1995); <u>Young v. Paramount Commc'ns (In re Wingspread Corp.)</u>, 186

B.R. 803, 807 (S.D.N.Y. 1995).  Rule 40(a) of the Federal Rules of Appellate

Procedure requires a party seeking rehearing to "state with particularity each point

of law or fact that the petitioner believes the court has overlooked or

misapprehended."  Accordingly, courts that adopt this standard will grant Rule

8015 motions only if the petitioner demonstrates that the court made an error of

fact or law with respect to the issues already presented to the court; neither new

evidence nor new arguments are considered valid bases for relief.  <u>See, e.g.</u>, <u>In re</u>

<u>Lobb</u>, 66 F. App'x. at 167 (<u>citing</u> <u>Sierra Club v. Hodel</u>, 848 F.2d 1068, 1100-01

(10th Cir. 1988) (per curiam) ("Petitions for rehearing under Fed. R. App. P. 40(a)

are permitted to enable parties to notify, and to correct, errors of fact or law on the

issues already presented; they are not meant to permit parties to assert new

grounds for relief.")).

 Other courts have opted instead to apply the test traditionally used to

evaluate motions for reconsideration.    These courts hold that Rule 8015 motions

> should be granted where: (1) "the Court has patently misunderstood a
> party," (2) the court "has made a decision outside the adversarial issues
> presented . . . by the parties," (3) the court has "made an error not of
> reasoning but of apprehension," or (4) there is a "controlling or
> significant change in the law or facts since the submission of the issue
> to the Court."

Shawnee State Bank v. First Nat'l Bank (In re Winders), 202 B.R. 512, 517 (D.

Kan. 1996) (quoting Above The Belt, Inc. v. Mel Bohannan Roofing, Inc., 99

F.R.D. 99, 101 (E.D. Va. 1983)) (alteration in original); see also In re Envirocon

Int'l Corp., 218 B.R. 978, 979 (M.D. Fla. 1998) (holding that a Rule 8015 motion

is "reviewed in the same manner as a motion for reconsideration," and thus

granted only if there is "(1) an intervening change in controlling law; (2) the

availability of new evidence; [or] (3) the need to correct clear and manifest

injustice").[6]

    In the absence of any guidance from the Third Circuit as to the appropriate

standard, this Court finds the latter approach to be the most equitable, and

therefore preferable, option.  As explained above, Rule 8015 is the sole vehicle by

which a party may seek relief from a judgment or order of a district court sitting in

its appellate capacity over a bankruptcy case.  Accordingly, the narrow Appellate

Rule 40(a) standard is overly restrictive.  If this Court were to adopt that standard,

it would be impossible for a party to ever raise a new issue, inform the court of

---

[6] At least one court merged the two standards by purporting to look to
Appellate Rule 40 for guidance, but then stating that a motion under Rule 8015
"should be granted for one of three reasons: (1) because of an intervening change
in controlling law; (2) because evidence not previously available has become
available; or (3) because it is necessary to correct a clear error of law or prevent
manifest injustice."  PHH Mortg. Servs. v. Higgason, No. 06-156, 2006 U.S. Dist.
LEXIS 52522, at *1-3 (D. Ky. July 28, 2006).

new facts, or argue that manifest injustice would result from the court's ruling.
There is no apparent reason for restricting parties' options so significantly in the
bankruptcy context.  In fact, the Third Circuit's well established interest in
expeditious resolution of appellate issues in bankruptcy cases weighs in favor of
the more relaxed standard.

The Third Circuit has repeatedly emphasized that the "unique
considerations in bankruptcy cases," Buncher Co. v. Official Comm. of Unsecured
Creditors of GenFarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000), require
quick and efficient resolution of "issues central to the progress of the bankruptcy
petition," Century Glove, Inc. v. First Am. Bank, 860 F.2d 94, 98 (3d Cir. 1988).
See id. ("We have also stressed that issues central to the progress of the
bankruptcy petition, those likely to affect the distribution of the debtor's assets, or
the relationship among the creditors, should be resolved quickly.") (internal
quotation marks and citations omitted).  The Third Circuit has even adopted
special finality rules to expedite the resolution of such issues.  See, e.g., United
States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir.
1999) (noting the "protracted nature of many bankruptcy proceedings, and the
waste of time and resources that might result if immediate appeal [is] denied"); In
re Marvel Entm't Group, Inc., 140 F.3d 463, 470 (3d Cir. 1998) ("[W]e apply a

broader concept of 'finality' when considering bankruptcy appeals under § 1291 than we do when considering other civil orders under the same section."); Clark v. First State Bank (In re White Beauty View, Inc.), 841 F.2d 524, 526 (3d Cir. 1988) ("[T]o delay resolution of discrete claims until after final approval of a reorganization plan . . . would waste time and resources, particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan.");16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3926.2 at 274 (2d ed. 1996) (describing the "Third Circuit's especially flexible approach to bankruptcy finality").  Requiring parties to go through a lengthy appeals process to raise issues of manifest injustice, a change in applicable law, or newly available facts, when the issue could be resolved by way of a motion for relief in the district court, would run counter to the Third Circuit's well-established broad concept of finality.

Accordingly, this Court will join those courts that apply the test traditionally used to evaluate motions for reconsideration to motions brought under Bankruptcy Rule 8015.  Under this standard, relief is warranted in this case if the Third Circuit's decision in Owens Corning alters the outcome of this case.[7]

---

[7] The Court acknowledges that there are minor differences among the courts that use the motion-for-reconsideration standard as to the precise situations that warrant relief.  Compare Shawnee State Bank v. First Nat'l Bank (In re Winders),

14

## C.    Effect of <u>Owens Corning</u>

Substantive consolidation is "the effective merger of two or more legally distinct (albeit affiliated) entities into a single debtor with a common pool of assets and a common body of liabilities."  Mary Elizabeth Kors, <u>Altered Egos: Deciphering Substantive Consolidation</u>, 59 U. Pitt. L. Rev. 381, 381 (1998). There is no specific statutory authority for substantive consolidation.  A bankruptcy court's power to consolidate derives, instead, from "its general discretionary equitable powers."  2 Collier on Bankruptcy § 105.09[1][b].  The Supreme Court "approved (at least indirectly and perhaps inadvertently) what became known as substantive consolidation" a little over six decades ago.  <u>Owens Corning</u>, 419 F.3d at 206.  Eventually, "[o]ther Circuit Courts fell in line in acknowledging substantive consolidation as a possible remedy."  <u>Id.</u> at 207.

Different Courts of Appeal have developed different tests for determining when substantive consolidation should be ordered, but "[u]ltimately, most courts slipstreamed behind two [tests]."  <u>Id.</u>  One of these tests was articulated by the United States Court of Appeals for the District of Columbia Circuit in <u>Drabkin v.</u>

_____

202 B.R. 512, 517 (D. Kan. 1996); <u>with</u> <u>In re Envirocon Int'l Corp.</u>, 218 B.R. 978, 979 (M.D.Fla. 1998).  The Court need not address these intricacies here, however, since an intervening change in decisional law is sufficient under any articulation of the standard.

Midland-Ross Corp. (In re Auto-Train Corp), 810 F.2d 270 (D.C. Cir. 1987), and

the other by the United States Court of Appeals for the Second Circuit in Union

Savings Bank v. Augie/Restivo Banking Co., Ltd. (In re Augie/Restivo Banking

Co., Ltd.), 860 F.2d 515 (2d Cir. 1988).

    The so-called "Auto-Train test" involves a two part analysis.  First, the

proponent of substantive consolidation must show that there is a "substantial

identity" between the entities to be consolidated.[8]  Auto-Train, 810 F.2d at 276;

see also Owens Corning, 419 F.3d at 208; Seth D. Amera and Alan Kolod,

Substantive Consolidation: Getting Back to Basics, 14 Am. Bankr. Inst. L. Rev. 1,

22 (2006).  Second, the proponent must demonstrate that consolidation is

necessary to avoid a harm or realize a benefit.  Auto-Train, 810 F.2d at 276.  If

there are both benefits and harms attendant to the consolidation, substantive

consolidation is warranted as long as "the demonstrated benefits of consolidation

'heavily' outweigh the harm."  Id. (quoting James Talcott, Inc. v. Wharton (In re

Cont'l Vending Mach. Corp., 517 F.2d 997, 1001 (2d Cir. 1975)).

    The "Augie/Restivo test," by contrast, "focus[es] on . . . the expectations of

---

    [8] The "substantial identity" analysis "mirrors that used by courts to
determine whether corporations are alter egos of one another."  In re Genesis
Health Ventures, Inc., 266 B.R. 591, 618 (Bankr. D. Del. 2001) (internal quotation
marks omitted).

the contractual creditors at the time they extend credit." Kors, supra, at 408.  In

Augie/Restivo, the Second Circuit cited several earlier cases dealing with

substantive consolidation for the proposition that there are numerous

considerations relevant to whether such consolidation is warranted.  It then found

that "these considerations are merely variants on two critical factors: (i) whether

creditors dealt with the entities as a single economic unit and 'did not rely on their

separate identity in extending credit,' . . . or (ii) whether the affairs of the debtors

are so entangled that consolidation will benefit all creditors." Augie/Restivo, 860

F.2d at 518.

Until recently, the Third Circuit had "commented on substantive

consolidation only generally," and had not made a definitive statement on when

substantive consolidation should be available.  See Owens Corning, 419 F.3d at

210; see also id. at 199 (calling substantive consolidation "an issue with no

opinion on point by our court").  In the absence of any such guidance, bankruptcy

courts and district courts within the circuit generally employed the test laid out by

the bankruptcy court in In re Morfesis, 270 B.R. 28 (Bankr. D. N.J. 2001).  The

"Morfesis test" is essentially identical to the D.C. Circuit's Auto-Train test.  See

id. at 31-33 (adopting and applying the Auto-Train test).

In accordance with this practice, the Bankruptcy Court in this case

evaluated Appellees' request for substantive consolidation under the <u>Morfesis</u> test, (Pick Affidavit, Exh. F, at 14 ("I agree with the proponents that the case of <u>In re Morfesis</u> adequately sets forth the standards for substantive consolidation.")), and found that the test was satisfied.  In addressing the first prong of the <u>Morfesis</u> analysis, the Court found that the testimony established "substantial identity" of the entities to be consolidated.  The Court based this decision in part on its explicit finding that "both debtors and creditors viewed the debtors as a single enterprise." (<u>Id.</u> at 17.)  The Court noted that: the three debtors have the same directors, officers, and shareholders; they "conducted the same general business under very similar names"; inter-company dealings were conducted without the usual formalities; they did not charge each other for services rendered; the debtors were viewed as a single entity for the purposes of secured lending; and "the unsecured creditors likewise viewed the debtors as a single entity when extending credit terms."  (<u>Id.</u> at 15-17.)  With respect to the second prong of the <u>Morfesis</u> test, the Court found that the benefits of consolidation, including elimination of the need to determine professional fees on a case-by-case basis and the difficulties of administering the three estates separately, greatly outweighed the potential harms.

In reviewing the Bankruptcy Court's Confirmation Order, this Court relied on the <u>Morfesis</u>/<u>Auto-Train</u> test as well.  <u>See</u> <u>In re Lisanti Foods, Inc.</u>, No. 03-

18

3868, Memorandum and Order of August 9, 2005, at 8. The Court held that there was ample evidence in the record to uphold the Bankruptcy Court's decision with respect to substantive consolidation.

Approximately a week later, however, the Court of Appeals for the Third Circuit decided <u>Owens Corning</u>, which significantly changed the law of substantive consolidation in this circuit. In <u>Owens Corning</u>, the Third Circuit began by "expressing its clear preference for <u>Augie/Restivo</u> over what it considered to be the insufficiently stringent test from <u>Auto-Train.</u>" Amera & Kolod, <u>supra</u>, at 31. The Court then provided a clear statement of what a proponent of consolidation must prove for substantive consolidation to be ordered:

> (i) prepetition [the entities to be consolidated] disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

<u>Owens Corning</u>, 419 F.3d at 211. The Court explained that a *prima facie* case under the first prong typically exists when, "based on the parties' pre-petition dealings, a proponent proves corporate disregard creating contractual expectations of creditors that they were dealing with debtors as one indistinguishable entity." <u>Id.</u> at 212. In addition, the Court explained that proponents who are creditors must also demonstrate that they actually relied on the debtors' supposed unity and that

their reliance was reasonable.  Id.

Appellants contend that "the facts and circumstances which allegedly justified the Bankruptcy Court's substantive consolidation of the Debtors are insufficient to establish either of the two criteria upon which substantive consolidation may be granted under Owens Corning."  (Appellants' Br. at 15.) The Confirmation Order, they argue, should therefore be reversed.  At a minimum, Appellants claim that because the Appellees' request for substantive consolidation was evaluated under the pre-Owens Corning Morfesis test, the case should be remanded to the Bankruptcy Court for further proceedings and reconsideration under the new standard.  This Court does not find either reversal or remand to be warranted in the specific factual situation presented by this case.

Given the significant change in the law of substantive consolidation wrought by the Third Circuit's decision in Owens Corning, outright reversal by the district court or remand to the bankruptcy court may indeed be warranted in many cases pending on appeal that were decided under pre-Owens Corning law. This is not one of those cases.  In this case, reversal is unwarranted and remand is unnecessary because the evidence presented in the bankruptcy hearings also provides ample support for granting substantive consolidation under the first prong (creditor reliance on pre-petition disregard of separateness) of the newly-

articulated <u>Owens Corning</u> standard.

The Bankruptcy Court explicitly found that creditors viewed the Debtors as a single entity when extending credit. This finding is supported by substantial record evidence, namely the testimony of accountant Bernard Katz and the written submissions of Mr. Lubetkin. Mr. Katz testified, based on numerous conversations with the creditors, that "each of the creditors dealt with the debtors on a combined basis where the financial risk was predicated on the total of the three entities. They did not render credit to each individual debtor, but rather as a combined entity." (Appendix to Appellee's Br. in Opposition to the Appeal from the Bankruptcy Court's Order, Exh. 2, at 130.)[9] Similarly, Mr. Lubetkin stated, in a sworn affidavit, that "creditors treated the Debtors as a single entity and relied on the Debtors as a whole when determining whether to extend credit." (<u>Id.</u>, Exh. 9, ¶ 34.) Although the Bankruptcy Court used the creditors' reliance on Debtor unity as evidence of "substantial identity," it also speaks directly to, and satisfies, the first prong of the <u>Owens Corning</u> test.

<u>Owens Corning</u> also requires creditor proponents of substantive consolidation to establish that their reliance on the debtors' unity was reasonable.

---

[9] The Bankruptcy Court found the testimony of the Trustee and Mr. Katz to be "credible and persuasive." (<u>Id.</u>, Exh. 1, at 16.)

Here, evidence produced in the bankruptcy hearings and relied on by the Bankruptcy Court to support a finding of substantial identity establishes the requisite reasonableness.  The evidence shows that all three Debtors had the same officers, directors and shareholders.  (Id., Exh. 2, at 69.)  They conducted virtually identical business operation under very similar names, and used the same general methods of operation. (Id.)  They performed all of their accounting functions from one centralized location (New Jersey), and the substantial bulk of their administrative staff worked out of New Jersey.  (Id. at 131.)  Given these facts, it was entirely reasonable for the creditors to rely on Debtors' unity.

Since the facts of this case support consolidation under both the old and new standard, the fact that the Bankruptcy Court and this Court originally evaluated the case under pre-Owens Corning law does not justify relief from this Court's prior Order.

## IV.   CONCLUSION

For the reasons stated herein, Appellants' motion for relief from this Court's Order of August 9, 2005 will be denied.


/s/    John C. Lifland, U.S.D.J.

Dated: October 11, 2006